[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff, Westchester Shopping Center, Inc., the owner of the subject premises, has appealed pursuant to ConnecticutGeneral Statutes Sections 12-117a and 12-119 from the action of the Brookfield Tax Assessor in valuing and assessing its real property on the Grand Lists of October 1, 1994 and October 1, 1995. Previous to this appeal, the plaintiff duly appealed to the Board of Tax Review of the Town of Brookfield but was afforded no relief. At trial, the plaintiff presented evidence of aggrievement and the court found that the plaintiff was aggrieved and had standing to appeal.
The subject property, a strip shopping center on a 2.3 acre parcel of land located at 491 Federal Road, Brookfield, Connecticut, is situated in an IR/C-80/40 commercial zone which permits retail use. It is improved with a one story masonary and steel building containing 10,600 square feet divided into twelve (12) stores with a paved parking area, all in varying states of repair. At trial, all witnesses agreed, and the court finds, that the property developed as a strip shopping center was being used for its highest and best use.
The last revaluation of property in the Town of Brookfield became effective with the Grand List of October 1, 1993. As a result of said revaluation, the Assessor placed a fair market CT Page 614 value of $635,900 on the subject property, consisting of a land value of $308,900 and a value of $327,000 for the building and other improvements. Based upon, the 70% ratio of assessed value to fair market value, the assessed value of the property was determined to be $445,130. These values are unchanged for the Lists of October 1, 1994 and October 1, 1995 which are the subject of this appeal.
The plaintiff presented evidence from its president, Mr. Frank Fioretti, who testified concerning the state of the subject property as of October 1, 1993, the difficulty of renting space, the vacancies and the failure of tenants to pay "overage" charges set forth in their leases.
Plaintiff's, appraiser, Eric Glidden, testified that in his opinion the fair market value of the property on October 1, 1993 was $467,000.00. The relied entirely upon the income capitalization method utilizing an economic rent for the property from claimed comparable market rents in the Brookfield, Connecticut market area. The opined that the replacement cost approach was inapplicable due to the age and condition of the improvements. The further opined that the market data approach could not be supported by sufficient data, that is, sales of comparable property in the area. Admitted into evidence was his written appraisal report setting forth his calculations, opinions and conclusions.
The defendant urges the court to reject the opinion of the plaintiff's appraiser, because, among other reasons, the defendant claims that said appraiser totally disregarded the actual rents and leases for the subject property on the basis that they are "above market" rents.
Defendant's appraiser, Michael A. Mazzia, testified, that in his opinion, the fair market value of the subject property as of October 1, 1993 was $732,000.00. The used the cost approach, the direct sales comparison approach and the net income approach to determine the true and actual value of the subject property. Relying primarily on the net income approach, although the attempted to buttress his opinion, with use of the other approaches, the reached the above opinion as to value. Admitted into evidence was his written appraisal report setting forth his calculations, opinions and conclusions.
The plaintiff urges the court to reject the opinion of the CT Page 615 defendant's appraiser, because, among other reasons, the plaintiff claims that said appraiser refused to recognize and deduct from the plaintiff's income any expenditure for the actual payment of real estate taxes, insurance costs, maintenance cost and utilities expense. Although the plaintiff's position is that the market data approach could not be supported by sufficient data, the plaintiff, nevertheless, claims that one of Mr. Mazzia's "comparable sales" supports its position concerning fair market value.
The defendant's other witness was Joseph Kusiak, the assessor of the defendant, Town of Brookfield. The testified that the was familiar with the subject property and had knowledge of the existing leases for the property. The testified that the revaluation process, done by a hired appraisal service, which resulted in the October 1, 1993 fair market value $635,900 was conducted in strict compliance with the requirements of Conn.Gen. Stats. 12-63b. In his opinion, the true and actual fair market value of the property was $635,900 as of October 1, 1993.
The plaintiff urges the court to reject the opinion of the assessor as to value, because, among other things, no one from the hired revaluation service appeared to testify, and the plaintiff claims that the assessor's valuation is at odds with the evidence presented.
As stated in Philip Ireland v. Town of Wethersfield,242 Conn. 550, 556-557 (1997):
 In Xerox Corp. v. Board of Tax Review, 240 Conn. 192, ___ A.2d ___ (1997), we recently restated the basic principles of the law governing a tax appeal pursuant to Sec. 12-117a. We observed that, in such an appeal, "the trial court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the (taxpayer's) property. . . . At the de novo proceeding, the taxpayer bears the burden of establishing that the assessor has overassessed its property . . . . The trier of fact must arrive at his own conclusion as to the value of (the taxpayer's property) by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going CT Page 616 to establish value.
 . . . if the trial court finds that the taxpayer has failed to meet his burden because, for example, the court finds unpersuasive the method of valuation espoused by the taxpayer's appraiser, the trial court may render judgment for the town on that basis alone.
 . . . if, however, the trial court finds that the taxpayer, in light of the persuasiveness, for example, of his appraiser, has demonstrated an overvaluation of his property, the trial court must then undertake a further inquiry to determine the amount of the reassessment that would be just . . . . it is in the context of such cases, namely, cases in which the taxpayer has met his initial burden of proving overvaluation, that we have noted the trial court's discretionary authority to find value and have declined to assign presumptive validity to the town's assessment figure. . . .".
 Connecticut General Statutes Section 12-63 requires the assessor and the board of tax review to set the value of property at its fair market value and that the present true and actual value of property shall be deemed by all assessors and boards of tax review to be the fair market value thereof. The words market value, actual valuation, fair market value and similar terms mean "a value in a market, in a place or conditions in which there are, or have been or will be within a reasonable time, willing sellers and able and ready buyers of property like that to be assessed." Federated Department Stores, Inc., v. Board of TaxReview, 162 Conn. 77, 86.
Connecticut General Statutes Section 12-63b sets forth the methods to be used by the assessor in determining the present true and actual value of property used primarily for the purpose of producing rental income. These methods include replacement cost less depreciation plus the market value of the land, the gross income multiplier method as used for similar property, the capitalization of net income method and the comparable sales approach.
In the present case, both parties rely primarily on the CT Page 617 income approach and the court finds that the capitalization of net income is the appropriate method to be used. The essence of the large difference of opinion between the appraiser of the plaintiff and that of the defendant would appear to be:
 how the gross income should be calculated; how much, if any, expenses should be deducted; what the net income should be.
In determining the fair market value of the property, the court takes into account both "(1) net rent from comparable properties and (2) the net rent derived from any existing leases on the property". First Bethel Associates v. Bethel, 231 Conn. 731, 740
(1995).
"(T)the trier is not limited to arbitrating the differing opinions of the expert witnesses but is to draw its conclusions in light of all the circumstances, its general knowledge and its viewing of the premises. (Citations omitted.) The trier may accept or reject the testimony, offered by one party or the other, in whole or in part." Midway Green Corporation v. Board ofTax Review, 8 Conn. App. 440, 442 (1986). "When confronted with conflicting evidence as to valuation, the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value." (Citations omitted.)Eichman v. J J Building Co., 216 Conn. 443, 452 (1990).
The court finds that the taxpayer has sustained the burden of establishing that the assessor has overassessed its property.
The court further finds that the true and actual value of the plaintiff's property is $593,000.
Accordingly, the court reduces the assessment of the plaintiff's property from $445,130 to $415,100.
MORTON I. RIEFBERG JUDGE TRIAL REFEREE